IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHNNY GURLEY (#B-01828),<br>　　Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 14 C 1009<br>Ronald A. Guzmán |
| THOMAS JOHNSON, et al.,<br>　　Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnny Gurley, an Illinois state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Gurley claims that Defendants, three Village of Matteson police officers, illegally searched and impounded his car when they arrested him for passing bad checks. Gurley also alleges a state law defamation claim. Before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the motion [51] is granted. Civil case terminated.

## BACKGROUND

### I.　Northern District of Illinois Local Rule 56.1

Because Gurley is a *pro se* litigant, Defendants served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2 (N.D. Ill.). (Dkt. # 54.) The notice explained in detail the consequences of failing to properly respond to a motion for summary judgment and statement of material facts under Federal Rule of Civil Procedure 56 and Local Rule 56.1.

Local Rule 56.1(a)(3) requires a party moving for summary judgment to submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." *Cracco v. Vitran Express, Inc.*,

559 F.3d 625, 632 (7th Cir. 2009) (citing L.R. 56.1(a)(3)). Under Local Rule 56.1(b)(3), the nonmoving party then must submit a "concise response" to each statement of fact, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B). The nonmoving party may also present a separate statement of additional facts that requires the denial of summary judgment. *See* L.R. 56.1(b)(3)(C); *see also Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008).

"When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by [Local Rule 56.1], those facts are deemed admitted for purposes of the [summary judgment] motion." *Cracco*, 559 F.3d at 632. Thus, district courts disregard Local Rule 56.1 responses that do not cite specific portions of the record or that contain irrelevant information, legal arguments, conjecture, or evasive denials. *See id.*; *see also Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006); *Bordelon v. Chi. Reform Bd. of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000).

A plaintiff's *pro se* status does not excuse him from complying with federal and local procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). Gurley is no stranger to *pro se* litigation, having now filed at least four other civil rights actions in this district alone. *See Gurley v. Sheahan*, No. 06 C 3454; *Gurley v. City of Chicago.*, No. 07 C 3987; *Gurley v. Chicago. Police Department*, No. 07 C 4774; and *Gurley v. Illinois Department of Corrections*, No. 14 C 1372. Despite the Local Rule 56.2 Notice, Gurley's response to Defendants' statement of facts clarifies or disputes certain points without any citations to the record and/or makes legal arguments. But it is well established that statements in a motion or a brief are not evidence and

2

carry no weight. *See, e.g., INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984); *Gross v. Knight*, 560 F.3d 668, 672 (7th Cir. 2009).

Nevertheless, given Gurley's *pro se* status, the Court will construe his filings liberally. *See Ambrose v. Roeckeman*, 749 F.3d 615, 618 (7th Cir. 2014). However, the Court will consider the factual assertions Gurley makes in his opposing brief only to the extent that he could properly testify about the matters asserted at trial. Affidavits must concern facts about which the affiant is competent to testify, must be based on personal knowledge, and must set forth such facts as would be admissible in evidence. *See* Fed. R. Civ. P. 56(e); Fed. R. Evid. 602.

With these standards in mind, the Court turns to the facts.

## II.    Relevant Facts

Johnny Gurley is an inmate in the custody of the Illinois Department of Corrections. He is currently serving sentences for forgery arising from convictions in DuPage and Cook Counties. Defendants Thomas Johnson, Antonio Vazquez, and Blair Brnicky are Matteson police officers. (Am. Compl., Dkt. # 22, at 2.)

On July 15, 2013, Gurley drove his GMC Envoy to a Sports Authority store located in a strip mall in the Village of Matteson. (Defs.' Mot. Summ. J., Ex. B, Gurley Dep., Dkt. # 53-2, ("Gurley Dep."), at 32-33, 35, 57, 65.) Gurley parked his truck in the parking lot in front of the Sports Authority, entered the store, purchased $229.95 worth of men's clothing with a fraudulent check signed with his name, exited the store with the items, and left the scene in his truck. (*Id.* at 35, 65-66, 76, 100-01; Defs.' Mot. Summ. J., Ex. E, Vazquez Aff., Dkt. # 53-12 ("Vazquez

3

Aff."), ¶¶ 10-12.)

Five days later, on July 20, 2013, Gurley drove his GMC Envoy to drop his brother off at work near the Matteson Sports Authority. (Gurley Dep. at 25, 40.) After dropping his brother off at work, Gurley drove his Envoy to the Matteson Sports Authority and parked the truck in the parking lot in front of the store. (*Id*. at 25, 63-64, 70-71.) Gurley once again purchased merchandise from Sports Authority with a fraudulent check. (*Id*. at 71, 76, 100-01.) This time, two Sports Authority employees stopped Gurley as he was getting ready to leave the store. (*Id*. at 71.)

One of the men who stopped Gurley was Randall Tischmann, a District Asset Protection Manager for Sports Authority. (*Id*. at 71-74; Defs.' Mot. Summ. J., Ex. D, Johnson Aff., Dkt. # 53-4 ("Johnson Aff."), ¶ 8). Tischmann had been investigating a series of fraudulent check purchases by Gurley at various Sports Authority stores in the region. (Johnson Aff., ¶ 8.) The Sports Authority employees led Gurley to a back office and questioned him about his purchases. (Gurley Dep. at 73-74; Johnson Aff., ¶ 13.) Gurley admitted that he knew the checks he had tendered to Sports Authority cashiers on July 15th and 20th were fraudulent. (Gurley Dep. at 76.)

In the meantime, a Sports Authority employee called the Matteson Police Department to report that they had a subject in custody for deceptive practices. (Gurley Dep. at 74; Johnson Aff., ¶¶ 3-5; Vazquez Aff., ¶¶ 3-5; Defs.' Mot. Summ. J., Ex. F, Brnicky Aff., Dkt. # 53-20, ("Brnicky Aff."), ¶¶ 3-5.) Within an hour or so of Gurley's detention, Defendants arrived on the scene. (Gurley Dep. at 73-75.) Johnson recognized Gurley from a previous fraud arrest. (*Id.* at

4

77.)

Surveillance video footage showed Gurley making the fraudulent purchases in question. (Gurley Dep. at 102; Johnson Aff., ¶ 14; Vazquez Aff., ¶ 16.) Store employees showed Defendants the video footage, in addition to providing the officers with (1) checks Gurley had used to pay for the purchases, (2) sales receipts for the transactions, (3) a photograph of the clothing items recovered on July 20th, along with a photograph of merchandise similar to what Gurley had purchased on July 15th; and (4) a written statement Gurley had signed wherein he admitted to tendering fraudulent business checks to Sports Authority. (Johnson Aff., ¶ 14; Vazquez Aff., ¶ 16.) In addition, Tischmann informed the officers that he and his partner had (1) confirmed through an investigation that Gurley's July 15th check was fraudulent, and (2) personally witnessed Gurley commit his July 20th fraudulent purchase. (Johnson Aff., ¶¶ 8-13; Vazquez Aff., ¶¶ 10-15.) Three store employees positively identified Gurley as the perpetrator on July 20th. (Johnson Aff., ¶¶ 15, 17-18.)

Officer Johnson contacted the Cole Taylor Bank, where a customer service representative confirmed that the account number on Gurley's July 20th check was not valid; the representative additionally advised the officer that Energy Constructions, Inc. (the drawer listed on the check) was not associated with any account at Cole Taylor Bank. (Johnson Aff., ¶ 16.)

When Gurley produced identification, Vazquez ran a warrant check on him through the Law Enforcement Automated Data System ("LEADS"). (Johnson Aff., ¶ 20; Vazquez Aff., ¶ 18; Brnicky Aff., ¶ 9.) The LEADS check revealed that Gurley was wanted on an outstanding DuPage County warrant stemming from forgery charges in March 2013. (Gurley Dep. at 16, 23,

24, 98; Defs.' Mot. Summ. J., Ex. C, IDOC Status Sheet, Dkt. # 53-3; Johnson Aff., ¶ 21; Vazquez Aff. ¶ 19; Brnicky Aff., ¶ 10.) Vazquez handcuffed Gurley, read him his *Miranda* rights, and placed him under arrest for the forgeries at the Sports Authority as well as on the basis of the outstanding warrant. (Gurley Dep. at 78, 79, 82; Johnson Aff., ¶ 22; Vazquez Aff., ¶ 20; Brnicky Aff., ¶ 11.)

During Gurley's post-arrest patdown search, Officer Brnicky found keys to Gurley's vehicle. (Gurley Dep. at 79; Johnson Aff., ¶¶ 23, 25; Vazquez Aff., ¶¶ 21, 23; Brnicky Aff., ¶¶ 12, 14.)[1]

As Officer Brnicky led Gurley out of the Sports Authority and into the squad car, Gurley noticed that at least one other officer was searching his car. (Gurley Dep. at 82-85, 87.) Vazquez explains that he was conducting an inventory search of Gurley's truck in the Sports Authority parking lot because the vehicle was being seized and impounded for having been used in commission of the felony forgery. (Johnson Aff., ¶ 27; Vazquez Aff., ¶ 25.) The officers believed that Village of Matteson ordinances authorized the seizure. (*Id.*) Moreover, it is the standard operating procedure of the Matteson Police Department to inventory, as a matter of routine, any vehicle impounded in connection with an arrest. (Johnson Aff., ¶ 28; Vazquez Aff., ¶ 26; Defs.' Mot. Summ. J., Ex. H, Matteson Police Dep't Gen. Order 96-8 ("Gen. Order 96-8"),

---

1 The officers assert that Gurley told them the make and model of his truck; Gurley contests this. A court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *See, e.g., Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010); *In re NeoPharm, Inc. Sec. Litig.*, 705 F. Supp. 2d 946, 962 (N.D. Ill. 2010). Here, the Court finds the dispute to be a non-material fact. Whether Gurley described his car to the officers and told them where it was parked or whether the officers found the car on their own is irrelevant for purposes of the issues presented in this case.

Dkt. # 53-23.)

The inventory serves three purposes: (1) To protect and safeguard the vehicle and its contents while in police custody; (2) to protect the agency against claims of lost, stolen, or damaged property; and (3) to protect police department employees and the public from any hazardous materials or substances that might be in the vehicle. (Johnson Aff., ¶ 28; Vazquez Aff., ¶ 26; Gen. Order 96-8.) Tow truck employees were present during the search of the vehicle. (Gurley Dep. at 32.)

The search of the truck yielded, among the other items inventoried, a Sports Authority receipt, personal and business checks from multiple banks, a driver's license with another individual's name, myriad gift cards, and a Visa debit card belonging to someone other than Gurley. (Gurley Dep. at 79-80; Defs.' Mot. Summ. J., Ex. I, Matteson Police Dep't Incident Rep. # 13-10362-01 ("Incident Rep."), Dkt. # 53-24.)

After Gurley was on his way to the police station, the Sports Authority cashier who had been involved in that day's fraudulent transaction asked for a store manager's help in processing the transaction. (Johnson Aff., ¶ 30; Vazquez Aff., ¶ 28.) The store manager, Paul Hupp, had approved Gurley's June 15th transaction and was working with the loss prevention team in connection with that earlier incident. (Johnson Aff., ¶ 31.) When the officers who remained on the scene learned that Hupp was an additional witness, they radioed Brnicky to bring Gurley back to the Sports Authority so that Hupp could identify him. (Gurley Dep. at 34, 37; Johnson Aff., ¶ 32; Vazquez Aff., ¶ 29; Brnicky Aff., ¶¶ 16-18.)

Brnicky returned to the Sports Authority with Gurley. (Gurley Dep. at 33, 37, 43, 46-47;

7

Brnicky Aff., ¶ 19.) Defendants directed Gurley, who was still in his street clothes but now handcuffed, to get out of the patrol car and stand outside the store so that Hupp could identify him. (Gurley Dep. at 33-34; Johnson Aff., ¶ 33; Vazquez Aff., ¶ 30; Brnicky Aff., ¶ 21.) The process lasted somewhere between 3 and 10 minutes. (Gurley Dep. at 34; Johnson Aff., ¶¶ 33-34; Vazquez Aff., ¶¶ 30-31; Brnicky Aff., ¶¶ 20-22.) Brnicky then transported Gurley back to the Matteson police station while Johnson and Vazquez continued their investigation. (Gurley Dep. at 34, 94; Johnson Aff., ¶ 35; Vazquez Aff., ¶ 32; Brnicky Aff., ¶ 21.)

As Brnicky was booking Gurley at the Matteson police station, Johnson learned that the cashier who had rung up the June 15th transaction was leaving town for an extended period of time within the hour. (Johnson Aff., ¶ 36; Vazquez Aff., ¶ 33.) Consequently, Johnson radioed Brnicky once again to request that Gurley be brought back to the Sports Authority so that the cashier could swing by the store and identify him. (Gurley Dep. at 34; Johnson Aff., ¶ 37; Vazquez Aff., ¶ 34; Brnicky Aff., ¶ 24.) Brnicky returned to the Sports Authority with Gurley a second time, and Gurley once again got out of the car and stood outside the store so that he could be identified. (Gurley Dep. at 33-34; Johnson Aff., ¶ 38; Vazquez Aff., ¶ 35; Brnicky Aff., ¶ 26.) The second trip back to the Sports Authority lasted between 2 and 10 minutes. (Gurley Dep. at 33-34; Johnson Aff., ¶¶ 38-39; Vazquez Aff., ¶¶ 35-36; Brnicky Aff., ¶¶ 26-27.)

During both identifications, Gurley stood next to the squad car, which was parked in the driveway directly in front of the Sports Authority, and he faced the front of the store the entire time he was out of the police car. (Gurley Dep. at 35, 65; Johnson Aff., ¶ 41; Vazquez Aff., ¶ 38; Brnicky Aff., ¶ 29.) The store employees remained inside the store during both

8

identifications. (Gurley Dep. at 43; Johnson Aff., ¶ 40; Vazquez Aff., ¶ 37.) Gurley did not hear any verbal exchanges between Sports Authority employees and the officers, and he does not know why the identifications were conducted at the store rather than at the police station. (Gurley Dep. at 44-45.)

Gurley maintains that cars drove by and people walked by while he presented himself for identification, and he believes that some of the individuals were looking at him and laughing. (*Id*. at 40-42.) Gurley did not recognize any of the individuals who may have seen him being arrested and/or in handcuffs in front of the store. (*Id.* at 18-21.) However, he fears that potential employers who saw him in handcuffs and/or getting arrested might remember the incident and refuse to hire him. (*Id.* at 44-45, 49.)

After the second identification, Gurley and all three officers returned to the Matteson police station. (*Id.* at 63; Johnson Aff., ¶ 42; Vazquez Aff., ¶ 39; Brnicky Aff., ¶ 28.) Officers advised Gurley of his *Miranda* rights verbally and in writing. (Gurley Dep. at 87, 88, 95-96; Johnson Aff., ¶ 43; Vazquez Aff., ¶ 40.) Gurley voluntarily signed a written confession admitting to using fraudulent checks to purchase items at the Matteson Sports Authority on two occasions. (Gurley Dep. at 87-90, 95-96; Johnson Aff., ¶ 40; Vazquez Aff., ¶¶ 41-44.) Officers informed Gurley that his vehicle was being impounded because it was involved in a crime, but only after the truck had already been searched and towed. (Gurley Dep. at 63, 96-97.) Gurley admitted at his deposition that he had planned to drive away from Sports Authority with the merchandise had he not been detained. (Gurley Dep. at 72-73.)

Two days after Gurley's truck was impounded, the financing company repossessed the

9

vehicle. (Gurley Dep. at 53-54; 58-60.) Gurley suspects that the repossession adversely affected his credit rating. (*Id.* at 54, 61.)

Johnson and Vazquez have sworn that they "truly and accurately" documented their personal observations, interactions and investigation in police reports, an incident report, and the inventory report concerning Gurley's vehicle. (Johnson Aff., ¶¶ 51, 52; Vazquez Aff., ¶ 48.) In fact, Gurley conceded during his deposition that all of the officers' reports were true and accurate.[2] (Gurley Dep. at 90-91.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for

---

2 Gurley went on to contradict himself during the deposition, first agreeing that "the items listed on the inventory sheet are all the items that were in [his] car . . . as far as [he] kn[e]w," but then, upon further questioning, stating that there were additional effects in the truck that he had recently taken to a baseball game. (Gurley Dep. at 105-06.) Regardless, Gurley provides no evidence to support his general charge that "Officers did not correctly inventory all items that were in the vehicle nor did they record or document the identification process of the showups." (Pl.'s Reply, Dkt. # 56, ¶¶ 27, 63-64.) Gurley's inconsistent and conclusory assertion that Defendants somehow erred is insufficient to defeat their well-supported motion for summary judgment.

trial." *Anderson*, 477 U.S. at 255 (quotation omitted).

## ANALYSIS

No outcome-determinative facts are in dispute, and the Court finds that Defendants are entitled to judgment as a matter of law. For the reasons detailed below, there is no triable issue as to either whether Defendants illegally searched and seized Gurley's truck or whether they defamed him. Accordingly, the Court grants Defendants' motion for summary judgment.

**I.     Police Officers Properly Inventoried and Impounded Gurley's Truck**

  **A.  Neither the Search Nor the Seizure Offended the Fourth Amendment**

Defendants' post-arrest search and seizure of Gurley's vehicle were justified under several exceptions to the warrant requirement. The Fourth Amendment prohibits unreasonable searches and seizures. *Heien v. North Carolina*, --- U.S. ---, 135 S. Ct. 530, 534 (2014). The Fourth Amendment generally requires a warrant to search personal property, but under the "automobile exception," the warrantless search of a vehicle is permitted in various situations, including when there is probable cause to believe the vehicle contains contraband or evidence of criminal activity. *See, e.g., Arizona v. Gant*, 556 U.S. 332, 346-47 (2009); *see also United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014); *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) ("Cars, however, are exempted from the warrant requirement provided officers have probable cause to believe the car contains contraband.").

Probable cause for a search exists when "based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *Richards*, 719 F.3d at 754. Probable cause does not require

information sufficient to support a conviction, and instead, "[a] fair probability of discovering contraband is enough." *Id.* at 755. "The automobile exception has no separate exigency requirement." *Maryland v. Dyson*, 527 U.S. 465, 466 (1999). Gurley used his GMC Envoy to commit his forgery offenses by driving to and (on the first occasion) from the Sports Authority store. Gurley insists that Defendants should not have searched his truck because he was inside the store and not within the vicinity of the vehicle when he was arrested. But Gurley's position that "the truck wasn't in a crime. I wasn't in the truck committing a crime," see Gurley Dep. at 96, misapprehends governing law. Because there was good reason for officers to believe there might be inculpatory evidence in the truck, such as more fraudulent checks or perhaps merchandise obtained from passing bad checks, Defendants were justified in searching Gurley's GMC Envoy. In fact, Defendants found a Sports Authority receipt as well as personal and business checks from multiple banks when they searched the car. (Defs. Ex. I, Incident Rep.) Vazquez also found identification and a debit card belonging to other people (although Gurley explained at his deposition that friends had simply left those items in the truck). (*Id.*; Gurley Dep. at 79-81.)

The same reasoning permits searches of vehicles incident to an arrest. "[A] warrantless search incident to arrest of the vehicle [is proper] if it is reasonable to believe evidence relevant to the crime of arrest might be found there." *Rodriguez v. United States*, --- U.S. ---, 135 S. Ct. 1609, 1621 (2015) (citing *Arizona v. Gant*, 556 U.S. 332, 335 (2009)). This is true even when the arrestee has left the vicinity of the vehicle. *See Thornton v. United States*, 541 U.S. 615, 623-24 (2004) ("So long as an arrestee is the … 'recent occupant' of a vehicle … officers may

search that vehicle incident to the arrest").

Warrantless seizures of property are also permitted in certain circumstances. *See Soldal v. Cook Cnty.*, 506 U.S. 56, 71 (1992). Police may seize a vehicle without a warrant if they have probable cause to believe the vehicle is subject to seizure, such as where the vehicle was used in the commission of a crime and is subject to forfeiture under state law. *See Florida v. White*, 526 U.S. 559, 561 (1999) (Fourth Amendment did not require police to obtain warrant before seizing automobile from public place when they had probable cause to believe it had been used in criminal activity); *see also G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351-52 (1977) (Fourth Amendment did not prohibit warrantless seizure of cars on public streets that were subject to tax liens); *United States v. Pace*, 898 F.2d 1218, 1241 (7th Cir. 1990) (warrantless seizure of vehicle did not violate the Fourth Amendment where police had probable cause to believe vehicle was subject to forfeiture under state law as having been used in the commission of a drug offense). This exception to the warrant requirement is premised on a recognition of "the need to seize readily movable contraband before it is spirited away." *White*, 526 U.S. at 565.

A municipal ordinance and police regulations specifically dictated that Defendants seize Gurley's truck. Under both Village of Matteson ordinance and police department rules, "[a] motor vehicle [must] be seized, towed to an authorized facility, and impounded if it was used by an arrestee in the commission of a misdemeanor or felony." (Defs.' Mot. Summ. J., Ex. G, Vill. of Matteson Ord. No. 4014 §§ 72.45(h) and 72.48(a); Matteson Police Dep't Gen. Order Nos. 97-7(IV)(A)(2) and (B)(1), Dkt. # 53-22.)

The lawful impoundment of Gurley's truck triggered another justification for its search: "Inventory searches constitute a well-recognized exception to the warrant requirement and are reasonable under the Fourth Amendment." *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010) (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976)). "Doing so protects the police from potential danger, protects the owner's property while it remains in police custody, and protects the police against claims of lost, stolen, or damaged property." *Cartwright*, 630 F.3d at 614 (citing *Opperman*, 428 U.S. at 369)). An inventory search is lawful if (1) the individual whose possession is to be searched has been lawfully arrested, and (2) the search is conducted as part of the routine procedure incident to incarcerating an arrested person and in accordance with established inventory procedures. *Cartwright*, 630 F.3d at 614 (citing *United States v. Jackson*, 189 F.3d 502, 508–09 (7th Cir. 1999)). Gurley concedes that Defendants had probable cause to arrest him; thus, they were authorized to conduct an inventory search of his car before it was towed away.

In his "Reply to Defendants' Statement of Facts," Gurley asserts that "Officers did not correctly inventory all items that were in the vehicle . . . ." (Pl.'s Reply, Dkt. # 56, ¶ 27.) But, as discussed in footnote 2, that conclusory allegation is insufficient to create an issue of material fact. Gurley does not indicate how Defendants violated the Fourth Amendment, or even municipal rules in the manner in which they conducted the inventory and search. Even if Officer Johnson somehow managed to overlook and fail to document camera and baseball equipment, "minor deviations from department policy do not render an inventory search unreasonable." *Cartwright*, 630 F.3d at 616 (citing *United States v. Lomeli*, 76 F.3d 146, 148-49 (7th Cir.

1996)). Johnson drafted a detailed list of all the items he found while inventorying Gurley's vehicle. Gurley has not demonstrated how the inventory search violated the Fourth Amendment. In short, the Court is satisfied that Defendants were authorized to impound Gurley's GMC Envoy pursuant to his arrest. The Court additionally finds that Defendants were permitted to search the vehicle without a warrant pursuant to the search-incident-to-arrest exception, the automobile exception, and the inventory search exception to the Fourth Amendment.

### B. Defendants' Actions Are Protected by Qualified Immunity

Even assuming (without finding) that Defendants violated Gurley's constitutional rights in searching and seizing his vehicle, the Court is persuaded that they are entitled to invoke qualified immunity. The doctrine of qualified immunity shields government officials from liability for civil damages where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Wood v. Moss*, --- U.S. ---, 134 S. Ct. 2056, 2061 (2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Locke v. Haessig*, --- F.3d ----, 2015 WL 3528782, at *3 (7th Cir. Jun. 5, 2015)). "In evaluating whether a state actor is entitled to summary judgment for qualified immunity, we consider (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Locke*, 2015 WL 3528782, at *3.

"When properly applied, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Taylor v. Barkes*, --- U.S. ---, 135 S. Ct. 2042, 2044

(2015) (citations and internal punctuation omitted); *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 723 (7th Cir. 2013) (same). Gurley is unable to point to any facts which show that Defendants violated a clearly established constitutional right in searching and seizing his vehicle. Accordingly, Defendants would be entitled to qualified immunity.

## II.    Defendants Did Not "Defame" Gurley

Gurley has not made a triable showing that Defendants defamed him. To prevail on a defamation claim, a plaintiff is required to show: (1) that the defendant made a false statement concerning the plaintiff; (2) that there was an unprivileged publication of the defamatory statement to a third party by the defendant; and (3) that the plaintiff was damaged. *Seitz-Partridge v. Loyola Univ. of Chi.*, 987 N.E.2d 34, 41 (Ill. App. Ct. 2013). "Truth is an absolute defense to defamation and true statements cannot support a claim of defamation." *Id.* In the case at bar, there is no allegation that any Defendant made a false statement about Gurley. Requiring Gurley to stand in front of the Sports Authority to be identified by store employees cannot be characterized as a "statement" at all, let alone a false or published one.

Rather than defamation, Gurley seems to be claiming that Defendants subjected him to intentional infliction of emotional distress and invaded his privacy by publicly shaming him. In Illinois, a plaintiff must satisfy three elements to state a cause of action for intentional infliction of emotional distress:  "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Feltmeier v. Feltmeier*, 207 Ill.

16

2d 263, 269 (2003) (quoting *McGrath v. Fahey*, 126 Ill. 2d 78, 86 (1988)). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Douglas v. Lofton*, No. 12 C 8592, 2013 WL 2156053, at *10 (N.D. Ill. May 17, 2013) (quoting *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864 (7th Cir. 2010)). In the present case, Defendants' actions were neither extreme nor outrageous and were motivated by a legitimate interest in having eyewitnesses either confirm or deny that Gurley was the individual who had presented fraudulent checks at the store on two separate occasions.

Defendants have articulated valid, convincing reasons for both return trips to the Sports Authority and were plainly motivated by an authentic interest in careful evidence-gathering rather than a desire to harass or demean Gurley. The discovery of a manager who had taken part in the first bad check incident prompted the first return to the store, and the news that the cashier was about to leave town for an extended period occasioned the second trip back to the store. Gurley misses the point in arguing that store employees could have gone to the police station instead of his returning to the store—the fact that Defendants might have decided on a different course did not render their actions unreasonable, and certainly not "extreme and outrageous." An arrest is inherently awkward and embarrassing. Even with some forty or so arrests under his belt, see Gurley Dep. at pp. 17-18, Gurley undoubtedly experienced some degree of shame when Defendants collared and questioned him in June 2013. However, even viewing the facts in the light most favorable to Gurley, no reasonable trier of fact could find that Defendants intentionally subjected him to undue degradation and anguish.

17

In sum, there is no genuine dispute as to any outcome-dispositive facts, and Defendants have demonstrated that they are entitled to judgment as a matter of law. Defendants acted within constitutional and statutory strictures in searching and impounding the vehicle Gurley used to commit his forgery offense and it is irrelevant that Gurley was nowhere near his truck at the time of his arrest. Furthermore, there is no triable issue as to whether Defendants defamed Gurley, intentionally inflicted emotional distress, or committed any other state or federal tort when they required him to briefly stand in front of the Sports Authority twice so that store employees could make a positive identification.

## **CONCLUSION**

For these reasons, the Defendants' motion for summary judgment [51] is granted and Plaintiff's motion for denial of summary judgment [55] is denied. The Court directs the Clerk to enter final judgment pursuant to Fed. R. Civ. P. 58.

If Gurley wishes to appeal, he may file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to proceed *in forma pauperis* on appeal should set forth the issues Gurley plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If Gurley chooses to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See, e.g., Hoskins v. Dart*, 633 F.3d 541, 544 (7th Cir. 2011).

Furthermore, if the Court of Appeals finds the appeal to be non-meritorious, Gurley may also be assessed a "strike" under 28 U.S.C. § 1915(g). Gurley is advised that, pursuant to that

18

statute, if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury.

**Dated**: July 8, 2015

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
**RONALD A. GUZMÁN**
**United States District Judge**